IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ICON STRUCTURES, INC., | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 84 LUMBER COMPANY, L.P., | ) | |
| | ) | |
| Defendant/Counter Claimant/ | ) | Case No. 19-1009-JWB |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSS OPS NORTH, LLC | ) | |
| d/b/a LATCO TRUSS, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on the following motions and briefs:  Counter Claimant 84 Lumber Company, L.P.'s ("84 Lumber") motion for summary judgment against Latco Truss ("Latco") on its affirmative defenses (Docs. 72, 73, 82, 88); 84 Lumber's motion for summary judgment against Plaintiff Icon Structures, Inc. ("Icon") (Docs. 74, 75, 81, 87); and Latco's motion for partial summary judgment on Icon's claim for prejudgment interest (Docs. 76, 77, 80, 89).  For the reasons stated herein, 84 Lumber's motions for summary judgment are DENIED and Latco's motion for partial summary judgment is DENIED.

I.    **Uncontroverted Facts**

The following statement of facts are taken from the parties' submissions and the stipulations in the pretrial order.  Factual disputes about immaterial matters are not relevant to the

determination before the court. Therefore, immaterial facts and factual averments that are not supported by the record citations are omitted. A citation to a pleading, such as the complaint or answer, is not a properly supported fact. Fed. R. Civ. P. 56. Legal conclusions are also not proper facts.

Plaintiff Icon was the general contractor for the construction of the Primrose of Blue Valley, a building located in Overland Park, Kansas (the "building"). Icon contracted with Ohana Land Company, LLC, who was the owner of the building. As the general contractor, in June 2017, Icon contracted with 84 Lumber to provide certain building materials ("the agreement"). The parties did not execute a formal written contract. 84 Lumber was to provide both windows and a truss package for the construction of the building. The price of the materials provided by 84 Lumber was $109,279.77. The price of the windows was $66,722.93. Icon has not claimed that the windows were defective. Rather, the issue in this litigation is the truss package delivered to Icon. (Docs. 75 at 2-3; 81 at 2-3.)

On June 7, Icon issued a purchase order to 84 Lumber for the truss package. (Doc. 81, Exh. 1.) The purchase order stated that the materials were to be provided "in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner." (*Id.*) The purchase order also refers to the specific plans and drawings for construction of the materials by date of approval. Although there is a signature line for the vendor, 84 Lumber, it is blank. According to Robert Wilson, Icon's president, 84 Lumber was to provide conforming trusses according to the plans and specifications provided with the purchase order. (Doc. 82, Exh. B at 16.) 84 Lumber asserts that it never agreed to the terms in the purchase order.

On or about June 17, 2017, 84 Lumber contracted with a third party, Latco, a truss designer and manufacturer, to build the trusses. (Doc. 66 at 3.) Icon did not have a contract with Latco.

(Docs. 81 at 11; 82 at 14.)  The parties dispute 84 Lumber's involvement in the design and construction of the truss package.  84 Lumber asserts that it played no role in the design and construction of the truss package.  However, those facts are controverted.  Icon cites to the deposition of Chris Ford, 84 Lumber's sales representative, in which he discusses his involvement with the truss shop drawings.  According to Ford, he was provided plans and specifications from Icon for the trusses and he then forwarded those plans to Latco.  When Latco provided drawings to Ford, he would then forward those drawings on to Icon.  (Doc. 75, Exh. A at page 9-11.)  Ford did not review the drawings submitted by Latco and did not inform Latco that the drawings had to be approved by the project architect.  (*Id.* at 53-54.)  After receiving the drawings, Icon would then submit those drawings to the project architect.  After approval, the drawings were then returned to 84 Lumber.  (Docs. 81 at 11-12; 87 at 3.)  In addition to being included on emails regarding the plans and specifications, Ford also was present at some meetings and phone calls in which the design, construction, and installation of the truss package was discussed.  Ford was also included in some of these meetings after problems arose with the trusses.  (Docs. 75 at 4-5; 81 at 7-9.)  For example, in one email, Ford was given notes about issues with the drawings and was told by Icon to have the "truss supplier" [Latco] modify the trusses.  (Doc. 82, Exh. E at 5.)  Ford then sent an email to Latco telling him to "see these notes and let me know if you have any questions."  (*Id.*)  84 Lumber was involved in the timing of the delivery of the truss package to the building site. (Doc. 82, Exh. E.)

On June 30, Bryan Wunsch, Icon's project manager, approved the truss shop drawings provided by Latco.  There is a dispute between Icon and Latco as to this approval.  (Doc. 82 at 16-17.)  Icon contends that 84 Lumber and Latco needed final approval from the architect prior to manufacturing the trusses.  84 Lumber did not advise Latco that Icon needed a sealed engineered

stamped copy of the drawings to forward to the architect for final approval.  (Docs. 82, Exh. C at 53; 88 at 6.)  On July 17, 2017, the truss package was delivered to the building site.  (Doc. 66 at 3.)  The trusses manufactured by Latco were then installed at the site.  84 Lumber had no role in the installation of the trusses.

Icon asserts that the trusses were defective and did not conform to the construction drawings or specifications that it provided to 84 Lumber.  Basically, Icon contends that there were significant problems with the trusses, including that the truss elevations did not match the height elevations on the architectural specifications.  (Docs. 77, Exh. B, August 2, 2018, Letter; 80 at 11.) Latco contends that the plans and specifications for the building supplied by Icon were defective. Latco's engineering expert, Brian Campbell, has opined that the architectural plans for the building had cross-sections with varying heel heights.  (Doc. 82, Exh. D.)

The parties attempted to fix the issue with the heel height on the trusses.  Icon made various proposals to the owner in lieu of removing and replacing the trusses and roof system.  Ultimately, the truss package was removed, and a new truss package was installed by another vendor.  (Doc. 82 at 18.)  Icon alleges that its damages were at least $267,786.50.  (Doc. 66 at 6.)  Latco's expert, Mr. Campbell, has opined that the truss package was structurally sufficient and that removing and replacing the truss package was unnecessary.  (Doc. 82, Exh. D.)  Although Icon disagrees with Mr. Campbell's opinions, Icon asserts that there were several defects in the trusses and that Latco did not provide a repair for all of those defects.  (Doc. 80 at 5; Exh. 1 at 54-55.)

On August 2, 2018, Icon sent a letter to 84 Lumber requesting payment of expenses.  The request included an itemized spreadsheet titled "costs for roof truss removal and replacement." (Doc. 77, Exh. B.)  The spreadsheet identified total expenses of $293,002.50.  That spreadsheet included two line items for attorney's fees.  After subtracting the attorney's fees in the August 2,

2018, spreadsheet, the amount Icon was seeking at that time was $267,786.50.  (Compare Doc. 77, Exh. B with Doc. 66 at 10.)

On January 17, 2019, Icon filed this action against 84 Lumber alleging breach of contract and breach of implied warranty of merchantability.  (Doc. 1.)  84 Lumber filed an answer and asserted a counterclaim against Icon for breach of contract in that Icon failed to pay the invoices for the windows and the truss package.  (Doc. 4.)  Icon admits that it has withheld funds but has allegedly done so as a setoff to Icon's damages due to the alleged breach of the agreement by 84 Lumber.  (Doc. 10.)  84 Lumber also filed a third-party complaint against Latco for breach of implied warranty, negligence, and breach of contract.  In its answer, Latco asserted various defenses.  (Doc. 5.)  The pretrial order in this matter now controls.  In it, Latco has raised several defenses.  Latco also asserts that 84 Lumber was comparatively negligent or at fault by: 1) participating in the approval of the truss shop drawings; 2) providing defective, inaccurate, and nonconforming architectural plans; 3) failing to equally participate in resolving the truss issues; and 4) failing to resolve the issues without the expense of removing and replacing the trusses and roof system.  (Doc. 66 at 9.)

84 Lumber has moved for summary judgment on Icon's claims asserting that it was not responsible for the design, construction, or installation of the truss package and therefore judgment must be entered on Icon's claims against it.  (Doc. 74.)  84 Lumber has also moved for partial summary judgment on various defenses asserted by Latco.  (Doc. 72.)  Latco has moved for partial summary judgment on Icon's claim for prejudgment interest asserting that Icon's damages are not fixed and certain.  (Doc. 76.)  The court will address the pending motions in turn.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.  *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  The nonmovant must then bring forth specific facts showing a genuine issue for trial.  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III.     Analysis**

**A.  84 Lumber's Motion for Summary Judgment Against Icon**

84 Lumber moves for summary judgment on Icon's claims of breach of contract and breach of implied warranty of merchantability and on its counterclaim for breach of contract.  84 Lumber also moves for summary judgment on its counterclaim of breach of contract against Icon.  Essentially, 84 Lumber argues that judgment is warranted because the agreement did not make 84 Lumber responsible for the design, construction, or installation of the truss package and 84 Lumber is not at fault with respect to the defects in the truss package.  Icon disagrees and contends that there are genuine disputes of material facts as to the terms of the contract.

The parties agree that Kansas law applies to Icon's breach of contract claim.  They also have agreed in the pretrial order that the Uniform Commercial Code ("UCC") governs Icon's claim of breach of implied warranty of merchantability.  (Doc. 66 at 2.)  However, instead of citing to the UCC in their argument, the parties' briefs generally cite to contract principles.  There are several statutory provisions in the UCC regarding contract formation.  Presumably, because the parties agree that the UCC applies to one claim, the parties would not dispute the applicability of the other provisions in the same chapter.  (*See* Doc. 66 at 2, citing "K.S.A. 84-2-104 [merchants and between merchants] and 84-2-314, et. seq.")  Under Kansas law, the UCC applies when the predominant purpose of the contract is for the sale of goods.  *See Care Display, Inc. v. Didde–Glaser, Inc*., 225 Kan. 232, 238, 589 P.2d 599 (1979).  Although the terms of the agreement are in dispute, it is undisputed that 84 Lumber was to supply materials, windows and the truss package, under the contract.  Since the briefs fail to disclose any heated debate regarding whether the contract claims are governed by the UCC or general contract law, the court assumes that the UCC is applicable here.[1]

Pursuant to K.S.A. § 84-2-204, a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  The parties do not dispute the existence of an agreement.  The parties' conduct supports that there was an agreement.  "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."  K.S.A. § 84-2-207(3).

---

[1] Alternatively, in the event the UCC is not applicable to the claim for breach of contract, the court finds under Kansas contract law principles there is a dispute as to the terms of the parties' agreement.

At issue is whether the terms of that agreement required 84 Lumber to provide the truss package in conformance with Icon's plans and specifications.  84 Lumber's position is that it had no involvement as to the design, construction, and installation of the truss package but that it relied on Latco to provide the truss package and, therefore, is not liable for any alleged defect in the truss package.

In its motion, 84 Lumber argues that the terms of the agreement are "clear and unambiguous." (Doc. 75 at 8.)  According to 84 Lumber, the only terms were that: 1) Icon ordered the materials; 2) 84 Lumber delivered the materials; and 3) the price was $109,279.77. (*Id.*)  While these terms were likely part of the agreement based on the undisputed facts, the presence of any additional terms is hotly disputed.

The facts show that Icon submitted a purchase order to 84 Lumber.  The purchase order specifically referenced the plans and specifications and stated that the work was to be performed in accordance with the drawings and specifications. (Doc. 81, Exh. 1.)  84 Lumber argues that it is not bound by the purchase order because it did not sign it.  As stated previously, the terms of an agreement consist of the writings as to which the parties agree to and "any supplementary terms incorporated under any other provisions of this act."  K.S.A. § 84-2-207(3).  In subsection (2) of the applicable statute, additional terms are proposals for addition to the parties' agreement.  When an agreement is entered into between merchants, those proposals "become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."  K.S.A. § 84-2-207(2); *see Transamerica Oil Corp. v. Lynes*, *Inc.*, 723 F.2d 758, 765 (10th Cir. 1983) ("provisions in the unsigned invoices not previously

agreed upon or different from an earlier understanding constitute mere proposals for additions to the agreements under § 84–2–207(2).")

The parties have not discussed these statutory provisions in the briefs.  At this stage, the court does not have sufficient facts to determine whether both parties are merchants under the statute regarding proposals of terms.  A merchant is a "person who deals in goods of the kind or otherwise by the person's occupation holds oneself out as having knowledge or skill peculiar to the practices or goods involved in the transaction…"  K.S.A. § 84-2-104.  In the pretrial order, the parties cited to this statutory provision but do not stipulate as to their status.  (Doc. 66 at 2.)  "The status of merchant is a mixed question of law and fact."  *Hammer v. Thompson*, 35 Kan. App. 2d 165, 184, 129 P.3d 609, 621 (2006).  While 84 Lumber's status as a merchant is likely given the undisputed facts, there are not sufficient facts to determine whether Icon is a merchant.  *See Concrete Indus., Inc. v. Dobson Bros. Const. Co*., No. 06-1325-WEB, 2007 WL 1455979, at *3 (D. Kan. May 17, 2007) (concrete supplier is merchant).

Even if this particular provision of the UCC is not applicable, Kansas courts have held that "[w]hen one party has knowledge of a term required by another party and continues to do business with that party without objection, the facts may establish that the party impliedly agreed to the term."  *Lindsey Masonry Co. v. Murray & Sons Constr. Co*., 53 Kan. App. 2d 505, 518, 390 P.3d 56, 65 (2017) (citing *Atchison County Farmers Union Co-op Ass'n v. Turnbull*, 241 Kan. 357, 363–64, 736 P.2d 917 (1987)).

The undisputed facts in this case are few.  While the parties agree that there was an agreement for the truss package, the terms of that agreement are hotly contested.  Icon has set forth evidence that would support that 84 Lumber impliedly agreed to its terms in the purchase order, including the fact that 84 Lumber delivered the truss package and invoiced Icon for that package.

*See Transamerica Oil Corp.*, 723 F.2d at 765 ("the invoice sent with the goods would surely qualify as an acceptance . . .")  Moreover, 84 Lumber had extensive involvement with the exchange of Icon's specifications and Latco's truss shop drawings.  84 Lumber has also not introduced any evidence that it objected to the terms in the purchase order.  Rather, by fulfilling that order and engaging in the communications regarding the plans and specifications, Icon has shown that 84 Lumber may have accepted those terms.  Moreover, based on the limited number of undisputed facts, the court cannot determine whether the contract has been materially altered by the inclusion of these terms.

If the court determines that the terms of the purchase order were not a part of the agreement, 84 Lumber could still be liable for Latco's performance.  The Tenth Circuit has held that courts generally "treat[] contractors as responsible for the performance of their suppliers and subcontractors."  *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 779 (10th Cir. 2007) (recognizing that there was not a Kansas case on point but finding that the rule of law was not a new one).

Therefore, 84 Lumber's motion for summary judgment on Icon's claim of breach of contract is denied.  84 Lumber's motion for summary judgment on its counterclaim for breach of contract is also denied as there is a dispute as to the terms of the agreement and 84 Lumber has not attempted to show that there is an absence of a genuine issue of material fact as to Icon's affirmative defenses.  *United Missouri Bank of Kansas City, N.A. v. Gagel*, 815 F. Supp. 387, 391 (D. Kan. 1993) ("plaintiff must show the absence of a genuine issue of material fact as to those affirmative defenses which have been preserved for trial…")

Although 84 Lumber moves for summary judgment on Icon's claim of breach of implied warranty, it has not specifically addressed the claim in its brief.  Rather, it appears that 84 Lumber's

sole position with respect to that claim is that it cannot be liable because it was not responsible for the design, construction, or installation of the truss package.  (Doc. 75 at 9.)  Because there is a dispute as to the terms of the contract and 84 Lumber failed to specifically address Icon's claim of breach of implied warranty, the motion for summary judgment on this claim must also be denied.

### B.  84 Lumber's Motion for Summary Judgment Against Latco

84 Lumber moves for summary judgment on Latco's "affirmative defenses which rely in part on claims that 84 Lumber was in some way at fault with respect to the design, construction, or installation of the truss."  (Doc. 73 at 9.)  The rule provides that summary judgment may be used to resolve defenses.  Fed. R. Civ. P. 56(a).  In the pretrial order, Latco asserts twenty-one defenses to 84 Lumber's claims.  84 Lumber has made no attempt to specifically identify the defenses on which it seeks summary judgment.  Rather, 84 Lumber makes the same arguments that were made in its motion for summary judgment against Icon.  Rule 56 requires the party to identify "each…defense…on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  84 Lumber has not done so.  Therefore, because 84 Lumber has failed to identify the specific defenses on which it seeks summary judgment, the court finds that 84 Lumber has not met its burden to show that it is entitled to judgment as a matter of law.

Alternatively, liberally construing 84 Lumber's motion, it appears that 84 Lumber is seeking summary judgment on Latco's comparative fault designation.  Latco has asserted that 84 Lumber was comparatively negligent or at fault due to: 1) participating in the approval of the drawings; 2) providing defective and inaccurate plans and specifications; 3) failing to equally participate in resolving the truss issues; and 4) failing to resolve the issues with the trusses without removing the trusses and roof system.  (Doc. 66 at 9.)

11

Pursuant to K.S.A. § 60-258a, a "plaintiff may recover damages so long as the plaintiff's negligence is less than the collective causal negligence of the other parties to the occurrence; but those damages are diminished in proportion to the plaintiff's own negligence." *Travelers Indem. Co. v. P1 Grp., Inc.*, No. 18-01287-EFM, 2020 WL 1062085, at *5 (D. Kan. Mar. 5, 2020) (citing *Simmons v. Porter*, 298 Kan. 299, 312 P.3d 345, 351 (2013) (citing K.S.A. § 60–258a)). The use of comparative fault is not proper in breach of contract actions but would be applicable to 84 Lumber's negligence claim against Latco.[2] *Spirit Aerosystems, Inc. v. SPS Techs., LLC*, No. 09-CV-1144-EFM, 2013 WL 6196314, at *10 (D. Kan. Nov. 27, 2013).

"Normally, the presence or absence of negligence is a question of fact reserved for the jury." *Travelers Indem. Co.*, 2020 WL 1062085, at *5. The court may resolve the issue on summary judgment when the facts "present only one reasonable conclusion." *Id.* (citing *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1261 (D. Kan. 2002)). The court has determined that there is a dispute of fact as to the terms of the agreement. Moreover, 84 Lumber has not set forth sufficient facts to determine whether the court can grant summary judgment on Latco's claims of comparative negligence. The court finds that this is a fact question that will be resolved by the jury.

84 Lumber's motion for summary judgment on Latco's defenses is denied.

**C. Latco's Motion for Summary Judgment on Prejudgment Interest**

Icon seeks an award of prejudgment interest if it is successful in its claims against 84 Lumber. Under Kansas law, prejudgment interest is available on liquidated claims and generally

---

[2] Although not addressed by the parties, the court notes that Latco has raised the economic loss doctrine as a defense to 84 Lumber's negligence claim. (Doc. 66 at 8.) Under Kansas law, the economic loss doctrine prevents a party from recovering purely economic losses in a tort claim "in circumstances governed by the law of contracts." *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (citations omitted). If Latco is successful in presenting this defense, 84 Lumber's negligence claim would not be submitted to the jury.

unavailable on unliquidated claims.  *Hutton Contracting Co. v. City of Coffeeville*, 487 F.3d 772, 786 (10th Cir. 2007).  A claim is liquidated when "both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation."  *Id.*  Under Kansas law, an award of prejudgment interest "may be allowable on unliquidated damages where necessary to arrive at full compensation."  *Id.*  (citing *Miller v. Botwin*, 258 Kan. 108, 899 P.2d 1004, 1012 (1995)).  In both cases, the award "lies within the sound discretion of the trial court."  *Id.*

Latco argues that the court may grant summary judgment on Icon's claim of prejudgment interest because Icon's damages are not fixed and certain.  Latco also asserts in its reply brief that this case is not one where a discretionary award of prejudgment interest is warranted.  (Doc. 89 at 18-19.)  In addition to arguing that its claim for damages is liquidated, Icon argues that Latco's motion is premature.  In response to this argument, Latco generally cites to *Green Const. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993), for the proposition that this can be resolved at summary judgment stage when no issue of material fact exists.  (Doc. 89 at 13.)  *Green*, however, was decided after a trial.  *Id.* at 1008 (denying a Rule 59(e) motion).  Latco does not identify a decision on this issue that was decided on a defense motion for summary judgment and the cases generally cited in its memorandum were issued after judgment on the merits.  *See Hutton*, 487 F.3d at 778 (jury trial); *Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y.*, 895 F.2d 670, 673 (10th Cir. 1990) (same); *Partex Apparel Int'l LTDA S.A. de C.V. v. GFSI, Inc.*, No. 10-2678, 2012 WL 1059854, at *5 (D. Kan. Mar. 28, 2012) (granting summary judgment in plaintiff's favor); *Penncro Assocs., Inc. v. Sprint Spectrum L.P.*, No. 04-2549-JWL, 2006 WL 1320252, at *1 (D. Kan. May 15, 2006) (court trial), *amended on reconsideration in part*, No. 04-2549-JWL, 2006 WL 1999121 (D. Kan. July 17, 2006), and *aff'd*, 499 F.3d 1151 (10th Cir. 2007), and *aff'd*,

499 F.3d 1151 (10th Cir. 2007); *Scherman v. Kansas City Aviation Ctr., Inc*., No. CIV. A. 92-2211-GTV, 1994 WL 519042, at *1 (D. Kan. Aug. 30, 1994), *aff'd*, 83 F.3d 433 (10th Cir. 1996) (court trial); *Applied Res., Inc. v. Chief Indus., Inc*., No. CIV. A. 90-2370-V, 1992 WL 135025, at *1 (D. Kan. May 21, 1992) (jury trial); *Ives v. McGannon*, 37 Kan. App.2d 108, 112, 149 P.3d 880, 886 (2007) (jury trial); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co*., 33 Kan. App.2d 504, 507, 104 P.3d 997, 1000 (2005) (entering judgment on the merits upon oral motion prior to jury trial).

Because the issue of prejudgment interest is routinely decided after a trial on the merits, this court has generally declined to address prejudgment interest in a motion for summary judgment. *See Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*, No. 12-2591-JWL, 2016 WL 7496106, at *1 (D. Kan. Dec. 30, 2016) (finding that the motion is premature as the court takes up the matter of prejudgment interest after trial); *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp*., No. 00-2402-JAR, 2002 WL 1934372, at *2 (D. Kan. Aug. 12, 2002) (same).  The court finds that such an approach is appropriate as the court has discretion to award prejudgment interest even when the damages are unliquidated. See *Black & Veatch Int'l Co.*, 2002 WL 1934372, at *2 ("The Court cannot determine whether the exception should apply and whether prejudgment interest will be necessary to provide full compensation until the underlying claims are determined on the merits.")

Latco's motion for summary judgment on Icon's claim for prejudgment interest is therefore denied.

**IV.      Conclusion**

84 Lumber's motions for summary judgment (Docs. 72, 74) are DENIED.  Latco's motion

for partial summary judgment (Doc. 76) is DENIED.

IT IS SO ORDERED.  Dated this 18th day of  August 2020.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
